# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cv-01273-JDB-egb |
| | ) | |
| PICTSWEET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, The Pictsweet Company ("Pictsweet"), pursuant to Fed. R. Civ. P. 56 and Local Rule 7.2, files its Memorandum in Support of Defendant's Motion for Summary Judgment against Plaintiff, Jamie Ross ("Ross") (AA, M, 50).[1]

## I.  INTRODUCTION

Plaintiff asserts claims for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), based on his race and sex; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"); and the Americans' with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA").[2] Specifically, Plaintiff alleges that he was discriminated against when he was (1) "unfairly" removed from a forklift position by his

---

[1] Pictsweet will reference African-American as "AA", Caucasian as "C", Hispanic as "H"; male gender as "M" and female gender as "F"; and the individual's age in numbers only, e.g. 42. Ages are as of Plaintiff's date of termination.

[2] Plaintiff also claims discrimination based on his county of residence (Gibson County) which is not a protected status under any state or federal statute; therefore, Pictsweet is entitled to judgment as a matter of law on those claims. Plaintiff further claims discrimination based on his status as a veteran. However, veteran status is not protected under any of the federal statutes cited by Plaintiff in his Complaint; therefore, Pictsweet is entitled to judgment as a matter of law on those claims.

supervisor, George Murry ("Murry") (AA, M, 52) and assigned to "heavier and harder jobs;" (2)

denied the right to drive the forklift by the Department Manager, Gary Crabtree ("Crabtree") (C,

M, 58), for a period of approximately five (5) days; (3) denied medical care for sixty (60) days

following a May 7, 2008, forklift accident ("May '08 Incident"); (4) denied payment of medical

bills owed to Beryl Yancey, M.D. ("Yancey"); (5) not placed on light duty immediately

following the May '08 Incident; and (6) denied medical care following an alleged March 11,

2009, forklift accident ("March '09 Incident").

Plaintiff also alleges that, after complaining to Crabtree that Murry allowed other forklift

drivers not to work as hard as Plaintiff, he was retaliated against by (1) being "unfairly" removed

from the forklift position and being assigned to "heavier and harder jobs;" (2) not being placed

on light duty following the May '08 Incident; and (3) being denied medical care for the March

'09 Incident.  Plaintiff also alleges that he was (1) written up for various workplace violations

and (2) not allowed to transfer to the Freshpack Department in retaliation for filing workers'

compensation claims.  Plaintiff further alleges that he was wrongfully terminated in retaliation

for "getting hurt too much."[3]  Lastly, Plaintiff alleges that Pictsweet violated his due process

rights under the Fourteenth Amendment to the United States Constitution.

## II.   RELEVANT PROCEDURAL HISTORY

Plaintiff filed the instant action on December 17, 2009, against his former employer,

naming several individual as those who discriminated against him.  (D.E. 1)  Pictsweet filed a

Motion to Dismiss/Alternatively Motion for Partial Summary Judgment as to Plaintiff's (1)

Fourteenth Amendment claims, since Plaintiff failed to and cannot plead or prove any State

---

[3] Plaintiff's allegation is premised on his recollection and interpretation of his termination meeting where he alleges he was told "this has been happening too much." (J. Ross Depo., p. 162-165).  Plaintiff surmises, with no supporting proof, that the statement "this has been happening too much" meant that he had been hurt too much. (J. Ross Depo., p. 163).

action and (2) Plaintiff's claims against all individual Defendants; since they are neither State actors nor "employers" under Title VII, they cannot be liable under that Act.  (D.E. 22).[4]  A trial is presently set for Monday, April 4, 2011.

### III.    STATEMENT OF MATERIAL FACTS

Although Pictsweet disputes many of Plaintiff's factual allegations; for the limited purpose of this summary judgment motion, Pictsweet accepts Plaintiff's version of the facts on those matters where the parties' account of the facts diverge.

1.      Plaintiff was first hired by Pictsweet in 2006 as a heavy general laborer, and he left shortly thereafter because he had no transportation.  (J. Ross Depo., p. 11-12)

2.      On October 26, 2007, Plaintiff applied for a position as a "Forklift [Driver] or Any Job" at the Bells, Tennessee, facility ("Bells Facility").  (Exh. 1: J. Ross Depo., p. 17).

3.      Plaintiff was hired by Human Resources Supervisor, Lisa Johnson ("Johnson") (AA, F, 43), to be a forklift trainee in the Repack Department.  (J. Ross Depo, p. 17; Exh. 2: Davis Decl., ¶ 4).

4.      Plaintiff received and acknowledged understanding of Pictsweet's Employee Handbook which contained a (1) non-discrimination policy; (2) harassment protection policy; (3) complaint procedure to report conduct believed to be discriminatory, retaliatory or otherwise improper; and (4) a description of terminable offenses, which includes failure to report an accident.  (Exh. 3: Exh. 3 to J. Ross Depo., Ack. of Receipt of Employee Handbook; Davis Decl., ¶ 3).

5.      Pictsweet maintains a policy whereby employees are given counselings, verbal and written, and can be suspended or terminated for violations of workplace policies.  (Davis Decl., ¶ 17).

6.      Plaintiff was 49 years-old when hired at Pictsweet in 2007 and 50 years-old when terminated in 2009.  (J. Ross Depo., p. 37).

7.      Murry (AA, M, 52) served as Plaintiff's immediate supervisor and Crabtree (C, M, 58) served as Plaintiff's Superintendent from October 28, 2007, to March 13, 2009.  (J. Ross Depo., p. 72.; Davis Decl., ¶¶ 6 & 7).

---

[4] Since the referenced motion is presently still pending, for judicial economy, Pictsweet incorporates the prior facts, legal authority, and evidence asserted therein into this motion, but will not address those issues further herein.

8.     On October 28, 2007, upon reporting to work, Plaintiff was sent to chop turnips in the Freshpack Department until November 1, 2007.  (J. Ross Depo., p. 17, 53).

9.     On or about November 2, 2007, Plaintiff began driving a forklift.  (J. Ross Depo., p. 54).

10.     On December 4, 2007, Plaintiff received a counseling from Murry noting that Plaintiff had been observed driving the forklift at an "excessive speed," had been warned to slow down, and would be removed from the forklift if Plaintiff did not make improvements by December 14, 2007.  (J. Ross Depo., p. 63; Exh. 4: Exh. 6 to J. Ross Depo., 12/4/07 Counseling; Exh. 5: Exh. 8 to J. Ross Depo., 8/4/08 Counseling).

11.     Plaintiff was thereafter removed from the forklift and reassigned to serve as a dump operator.  Plaintiff's work hours, benefits, and salary remained the same.  (J. Ross Depo., p. 63; Davis Decl., ¶ 23).

12.     In early 2008, Plaintiff was reassigned to serve as a stacker.  Plaintiff's work hours, benefits, and salary remained the same.  (J. Ross Depo., p. 67; Davis Decl., ¶ 23).

13.     Plaintiff claims that the May '08 Incident occurred when he was hit in the back with a forklift.  (J. Ross Depo., p. 106).

14.     Plaintiff's supervisor, Murry, did not believe that he had been injured in the May '08 Incident.  (J. Ross Depo., p. 106-109).

15.     Following the May '08 Incident, Plaintiff received treatment from Yancey (J. Ross Depo., p. 106-109).

16.     Pictsweet maintains a policy prohibiting payment of medical bills to physicians who are not part of an approved Pictsweet workers' compensation physician panel.  (Davis Decl., ¶ 9).

17.     Yancey was not part of Pictsweet's approved workers' compensation physician panel.  (Davis Decl., ¶ 10).

18.     Pictsweet declined to pay Yancey's medical bills because Yancey was not part of an approved Pictsweet workers' compensation physician panel.  (J. Ross Depo. p. 107-109; Davis Decl., ¶ 11).

19.     Plaintiff received a counseling on May 29, 2008, noting that the machine operators had complained that he was interfering with production, excessively leaving his line, and demonstrating signs of aggression.  (Exh. 6: Exh. 7 to J. Ross Depo., 5/29/08 Counseling).

20.     On June 3, 2008, Plaintiff was placed on light duty until an MRI scan could be conducted.  (Davis Decl., ¶ 8).

21.     After Plaintiff suffered another work-related injury on August 4, 2008, he was placed on light duty again and assigned to be a product inspector.  (J. Ross Depo., 113, 145).

22.     Plaintiff remained a product inspector until the time of his termination.  (J. Ross Depo., p. 145).

23.     On August 4, 2008, Plaintiff received a counseling in writing explaining that he had been removed from the forklift in December 2007 after he was observed driving the forklift in a reckless manner.  The counseling also noted that Plaintiff had "anger management issues," did not follow instructions well, and had not shown consistent control of his anger issues, thereby rendering him "a risk as a forklift driver."  (J. Ross Depo., p. 118-119; Exh. 5).

24.     Plaintiff received a counseling on September 25, 2008, noting that he had been injured by a forklift while he was impermissibly sitting down on the stand by the shaker, had been taking excessive breaks, and not taking breaks in the Poly Room, as required.  (J. Ross Depo., p. 135-136).

25.     Pictsweet maintains a policy prohibiting transfer between departments if an employee has received recent discipline.  (J. Ross Depo. at 133).

26.     Prior to the March '09 Incident, Plaintiff had reported all his work-related injuries to Murry, Crabtree or machine operator, Ricardo Figueroa ("Figueroa").  (J. Ross Depo., p. 153-154).

27.     Plaintiff did not report the March '09 Incident to Figueroa.  (J. Ross Depo., p. 154).

28.     Plaintiff did not report the March '09 Incident to Murry or Crabtree.  (Davis Decl., Attachment 2A).

29.     Regarding the March '09 Incident, Plaintiff told an hourly employee, Cornell Douglas ("Douglas"), that Ismael Fonseca ("Fonseca") ran into the shaker bed, knocking Plaintiff off his platform, and wrenching Plaintiff's back.  (J. Ross Depo., p. 146-147).

30.     Plaintiff told Douglas that Plaintiff did not want to report the March '09 Incident to his supervisor(s) because he did not want to be ineligible to receive a $50-$500 award given to employees who remained injury-free for six (6) weeks.  (J. Ross. Depo., p. 147-148).

31.     On the morning of March 12, 2009, Plaintiff called Human Resources leaving a voicemail message that he needed to see a doctor because he had been hit by a forklift the previous night.  (J. Ross Depo., p. 155).

32.     Plaintiff later spoke to Johnson and Jennifer Curtis ("Curtis") (C, F, 41), Human Resources Generalist, who tried to set up a doctor's appointment for Plaintiff.  (J. Ross Depo., p. 156-157; Davis Decl., ¶ 22).

33.     Stephanie Davis ("Davis"), Human Resources Manager, investigated the March '09 Incident and received statements from three (3) of Plaintiff's co-workers stating that they did not observe any accident involving Plaintiff and/or that Plaintiff did no report the March '09 Incident to them.  (Davis Decl., ¶¶13-14).

34.     Upon reporting to Human Resources on Monday, March 16, 2009, Plaintiff was terminated, effective March 13, 2009.  (J. Ross Depo., p. 155).

35.     The only statement Plaintiff can recall being made to him regarding the basis for his termination is, "This has been happening too much."  (J. Ross Depo., p. 111, 162-165).

36.     Plaintiff's termination form indicates the reason for termination was failure to report a work-related accident.  (Davis Decl., ¶ 16).

37.     Plaintiff alleges that he suffers from a disability as a result of injured knees, an injured left-shoulder, and an injured cervical spine.  (J. Ross Depo., p. 29-31).

38.     At the time of hire, Plaintiff suffered from no physical or mental impairment that prohibited him for performing his job.  (J. Ross Depo., p. 31).

39.     At the time of hire, Plaintiff was able to care for, groom, feed and clothe himself.  (J. Ross Depo., p. 38-39).

40.     A radiology report, dated October 13, 2009, indicated that a "previously described herniated disc at the L5-S1 level" was "no longer present."  (10/13/09 Radiology Report, Exh. 12 to J. Ross Depo., filed separately as a sealed exhibit).

41.     Plaintiff continuously worked for Plaintiff from the time of hire to the date of termination.  (Davis Decl., ¶ 5).

42.     Plaintiff worked a construction job after his termination from Pictsweet.  (J. Ross Depo., p. 187).

43.     Plaintiff filed a Charge of Discrimination ("Charge") on April 30, 2009, alleging that he was discharged and "unfairly" removed from his position as a forklift driver and assigned to "heavier and harder jobs" (i.e. dump operator and stacker) in violation of Title VII, the ADEA, and the ADA.  (D.E. 1, ¶ 4; J. Ross Depo. p. 44-45, 141-142; Exh. 7: Exh. 5 to J. Ross Depo., Charge).

44.     In subsequent correspondence with the EEOC, Plaintiff alleged that he was retaliated against for making complaints and that Pictsweet "failed to report all the accidents and injuries I incurred on the job."  (Exh. 8:  Pl. Resp. to Def. Req. for Prod., "Add'l Info." submitted to EEOC).[5]

---

[5] Plaintiff does not include failure to report work-related injuries in his Complaint or deposition testimony.

45.     Plaintiff also alleges that he was removed from the forklift position in retaliation for complaining to Crabtree that the other forklift drivers were taking excessive breaks.  (J. Ross Depo., p. 44, 51-52, 56; Exh. 7: Charge).

46.     Plaintiff alleges that the following Repack Department employees were treated differently than Plaintiff:

        (a)     John Burns ("Burns") (AA, M, 59), Mickel Robertson ("Robertson") (AA, M, 28), and Ismael Fonseca ("Fonseca") (H, M, 45) were not terminated after they hit Plaintiff with a forklift on August 22, 2008, September 25, 2008, and the March '09 Incident, respectively.  (J. Ross Depo., p. 77-79; 81-82; 101; Davis Decl. ¶¶ 18-19, 21).

        (b)     Sheron Lampton ("Lampton") (AA, F, 45) was allegedly not written up after she ran into another forklift.  (J. Ross Depo., p. 92; Davis Decl. ¶ 20).

47.     Plaintiff was never reprimanded for having an accident on the forklift.  (J. Ross Depo., p. 100).

48.     Plaintiff alleges that (1) if Plaintiff had hit an employee, the shaker or a forklift, Plaintiff would have been reprimanded or fired (J. Ross Depo., p. 79-82, 91-92); and (2) Crabtree and Murry allowed AA, C, and H men and women not to work as hard as Plaintiff.  (J. Ross Depo., p. 73).

49.     Plaintiff admits that Crabtree and Murry "just didn't like [him]."  (J. Ross Depo., p. 90).

50.     Plaintiff alleges that Crabtree denied him the right to drive the forklift from October 28 – November 1, 2007.[6]  (J. Ross Depo., p. 45, 48-49, 142).

51.     Plaintiff alleges that he (1) was written up for various workplace violations and (2) was not allowed to transfer to the Freshpack Department in retaliation for filing workers' compensation claims.  (J. Ross Depo., p. 128-129, 132-133).

52.     Plaintiff alleges that he was (1) denied medical care for sixty (60) days following the May '08 Incident; (2) not immediately placed on light duty following the May '08 Incident; and (3) denied payment of medical bills owed to Yancey, whom Plaintiff saw immediately after the May '08 Incident, on the basis of his race, sex, age, disability and in retaliation for complaining to Crabtree that other forklift drivers were not doing their work.  (J. Ross Depo., p. 96-98, 106-109).

---

[6] Since Plaintiff does not identify any discriminatory bases for this claim, for purposes of this motion, Pictsweet assumes the bases are race, age, sex, and disability.  Because Crabtree denied Plaintiff the right to drive the forklift on the first day of his employment, the claim of retaliation would not be applicable because, as of the first day of Plaintiff's employment, he had not yet complained about Murry to Crabtree nor had he filed workers' compensation claims.

53.     Plaintiff asserts, as his sole comparator, Susan Revell ("Revell") (C, F, 40), whom he believes was immediately sent to a doctor and placed on light duty after suffering a forklift accident.  (J. Ross Depo., p. 95-97; Davis Decl. ¶ 12).

54.     Revell was terminated on October 10, 2008, for unsatisfactory performance stemming from forklift safety violations.  (Davis Decl., ¶ 12).

55.     Plaintiff alleges that he was denied medical care following the March '09 Incident in violation of Title VII.[7]  (J. Ross Depo., p. 110).

56.     Plaintiff alleges that he was wrongfully terminated on March 13, 2009, because he "got hurt too much."  (J. Ross Depo., p. 111).[8]

## IV.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is proper where, "[T]aking the evidence in the light most favorable to the non-moving party, 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  La Quinta Corp. v. Heartland Props. LLC, 603 F.3d 327, 335 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)).  It follows that summary judgment is proper when the movant shows an absence of evidence to support an essential element of the nonmovant's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986); Martin v. Boeing-Oakridge Co., 244 F. Supp. 2d 863, 871 (E.D. Tenn. 2002).  When a motion for summary judgment is filed, the nonmoving party is required "to put up or shut up [on] the critical issues of [his] asserted causes of action."  Jones v. City of Jackson, 335 F. Supp. 2d 865, 867 (W.D. Tenn. 2003) (citations omitted; brackets in original).  To avoid an adverse summary judgment ruling, Plaintiff cannot rest on his pleadings or unsupported allegations.  He must show "specific facts showing a genuine issue of material fact for

---

[7] Plaintiff does not specifically identify the discriminatory bases on which he was denied medical coverage; therefore, for purposes of this summary judgment motion, Pictsweet will assume that Plaintiff alleges he was denied medical coverage on the basis of each of the categories previously alleged.

[8] See supra fn.3.

trial" and submit admissible evidence sufficient to permit a reasonable jury to return a verdict in his favor.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.  Moreover, "[i]f the evidence is merely colorable, or it is not significantly probative, summary judgment may be granted."  Id. at 249-50.  Conclusory or speculative testimony cannot defeat a motion for summary judgment, Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 888-89 (1990), and Plaintiff cannot create issues of fact by presenting testimony contradicting other portions of his testimony.  Martin v. Boeing, 244 F. Supp. 2d 863, 873 n. 6 (E.D. Tenn. 2002).

### B.   Discrimination and Retaliation

Plaintiff has no direct evidence that Pictsweet discriminated against him on the basis of any alleged protected category.  Accordingly, the circumstantial evidence framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), applies.[9]  Under this analysis, if Plaintiff establishes a *prima facie* case, the burden shifts to Pictsweet to articulate one or more legitimate, non-discriminatory reasons for the employment decision.[10]  Should Pictsweet carry this burden, Plaintiff bears the burden of persuading the Court by a preponderance of the evidence that each proffered reason is a pretext for illegal discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

---

[9] Claims of discrimination under Title VII, the ADEA, and the ADA are each analyzed under the McDonnell Douglas burden-shifting analysis.  Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (ADA disparate treatment claim); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992) (and ADEA disparate treatment claim).

[10] This is a burden of production, not of persuasion; therefore, Pictsweet does not have to persuade the Court that it was actually motivated by the reason advanced.  McDonnell Douglas, 411 U.S. at 802.

To establish a *prima facie* case of disparate treatment under Title VII, Plaintiff must show that he (1) is a member of a protected group; (2) was subject to an adverse employment action; (3) was qualified for the position; and (4) a similarly situated, non-protected employee was treated more favorably.  Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002); Primes v. Reno, 190 F.3d 765, 766 (6th Cir. 1999).  Similarly, to establish a *prima facie* case of disparate treatment under the ADEA, Plaintiff must show that he was (1) a member of the protected class, meaning he was at least 40 years-old; (2) subjected to an adverse employment action; (3) qualified for the position; and (4) replaced by a "significantly younger person," or was treated differently from a similarly situated employee outside the protected class.  See  Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410 (6th Cir. 2008); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 459-60 (6th Cir. 2004).

To establish a *prima facie* case of disparate treatment under the ADA, Plaintiff must show that (1) he is an individual with a disability, (2) who is otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability."  Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008) (citation omitted).  The third element requires that the plaintiff suffer an "adverse employment action."  Id.  Lastly, to establish a *prima facie* case of retaliation, Plaintiff must show that he (1) engaged in activity protected by Title VII; (2) this exercise of protected rights was known to Pictsweet; (3) Pictsweet thereafter took adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).

## V.    LEGAL ARGUMENT

For the following reasons, Plaintiff's claims of discrimination under Title VII, the ADEA, and the ADA fail as a matter of law.

### A.    Several Claims Are Time-Barred

Several of Plaintiff's claims are not actionable because the alleged discriminatory acts occurred more than 300 days before Plaintiff filed his Charge with the Equal Employment Opportunity Commission ("EEOC").  A Charge is timely if filed with the EEOC within 300 days from "the date on which the alleged discriminatory act . . . was communicated to the plaintiff." Amini v. Oberlin Coll., 259 F.3d 493, 498 (6th Cir. 2001).  Furthermore, a Title VII plaintiff cannot assert claims in a lawsuit that were not properly alleged in a Charge filed with the EEOC. See 42 U.S.C. § 2000e-5(f)(1).  In the instant case, Plaintiff filed his Charge on April 30, 2009; thus, to be actionable, the alleged discriminatory acts must have occurred on or after July 4, 2008.  (Exh. 7: Charge).

Several of the alleged discriminatory acts occurred before July 4, 2008, including Plaintiff's claims of being (1) "unfairly" removed from a forklift position by Murry and assigned to "heavier and harder jobs" (i.e. dump operator and stacker positions); (2) not allowed to drive the forklift by Crabtree for five (5) days; (3) denied medical care following the May '08 Incident; (4) not immediately placed on light duty following the May '08 Incident; and (5) denied payment of Yancey's medical bills.  Specifically, Plaintiff was (1) denied the right to drive the forklift by Crabtree in October and early November 2007 (Depo., p. 45, 48-49, 142) and (2) removed from the forklift and assigned to a dump operator position and stacker position in December 2007 and early 2008, respectively (J. Ross Depo., p. 63, 67).  As such, these claims are clearly time-barred. Additionally, Ross was, in fact, placed on light duty on June 3, 2008.  (Davis Decl., ¶ 8).

Therefore, the alleged denial of light duty to Plaintiff after the May '08 Incident is false, but more importantly, even if true, it occurred well before July 4, 2008, and is also time-barred. Similarly, Plaintiff testified that he was denied medical treatment following the May '08 Incident because Murry did not believe Plaintiff was actually hurt, but Plaintiff was actually treated by Yancey following the May '08 Incident.  (J. Ross Depo., p. 106-109).  Because Plaintiff was allegedly denied treatment by Pictsweet and actually treated by Yancey prior to July 4, 2008, his claims based on these discrete acts are also time-barred.

## B.   Failure To Exhaust Remedies

Plaintiff's remaining claim – he was denied medical care following the March '09 Incident in violation of Title VII is not time-barred, but, it is not viable.  (J. Ross Depo., p. 110). This claim, as well as Plaintiff's other claims that he was denied medical care, not immediately placed on light duty, and denied payment for Yancey's medical bills following the May '08 Incident, on the basis of race, sex, age and disability, fail as a matter of law because they were not alleged in Plaintiff's EEOC Charge and did not arise during the EEOC's investigation.

A Title VII plaintiff may not allege claims in a lawsuit that were not alleged in his Charge.  See 42 U.S.C. § 2000e-5(f)(1); Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 362 (6th Cir. 2010).  This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion.  See Younis, 610 F.3d at 44.  Allowing a Title VII action to encompass claims outside the reach of the Charge would deprive the employer of notice and frustrate the EEOC's investigatory and conciliatory role.  Id.  At the same time, courts may also consider claims that are reasonably related to or grow out of the factual allegations in the Charge.  See Younis, 610 F.3d at 44.  As a

result, "[t]he claim must grow out of the [EEOC] investigation or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt investigation of the claim." Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (6th Cir. 2000); Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir. 1998).

In Davis, the Sixth Circuit barred a plaintiff from bringing an age discrimination claim where she filed a Charge based on "race" and "other." The court granted the defendant's motion for summary judgment on the grounds that (1) the plaintiff related no facts in her affidavit describing the "race" and "other" charges that would prompt the EEOC to investigate age discrimination, and (2) a claim of age discrimination did not in fact grow out of the investigation. Id. at 464. Similarly, in Chacko v. Patuxent Inst., 429 F.3d 505, 511 (4th Cir. 2005), the Fourth Circuit held that the plaintiff failed to exhaust her administrative remedies where her Charge dealt with different time frames, actors, and conduct than the central evidence produced at trial. Most analogous to the instant case, however, is Katch v. Fifth Third Bancorp, 2009 U.S. Dist. LEXIS 4056, at *31-*33 (E.D. Mich. Jan. 21, 2009) (Exh. 9, cited case). In Katch, the plaintiff alleged disability discrimination, in part, based on an application she submitted to the defendant in April 2007. The defendant argued that the plaintiff's claim of disability discrimination premised on her April 2007 application was barred because she did not provide the defendant with notice of that claim, as her May 2007 EEOC Charge referenced only her March 2007 application. The court held that, in her May 2007 Charge, the plaintiff "did not state any facts related to her April 23, 2007, application . . . [and therefore,]. . . would not be likely to 'prompt investigation of the claim.'" Id. However, the plaintiff was ultimately allowed to bring the claim because she wrote a letter to the EEOC during its investigation mentioning the April 2007 application, thereby putting the defendant on notice. Id. at *33.

- 13 -

In the instant case, Plaintiff alleged in his Charge that (1) he was discharged in March 2009 and (2), sometime prior to his discharge, he was removed from his position as a forklift driver and assigned to more physical jobs, in violation of Title VII (discrimination and retaliation), the ADEA, and the ADA.  (Exh. 7: Charge).  Additionally, in his subsequent correspondence with the EEOC, he alleged that he was retaliated against for making complaints and that Pictsweet "failed to report all the accidents and injuries I incurred on the job."[11]  (Exh. 8: Add'l Info.).  However, Plaintiff mentioned <u>nothing</u> in his Charge or subsequent correspondence with the EEOC that would put Pictsweet on notice that Plaintiff was alleging discrimination or retaliation based on (1) denial of medical care following the May '08 or March '09 Incidents, (2) failure to be placed immediately on light duty following the May '08 Incident, and/or (3) denial of payment for Yancey's medical bills.  (Exh. 8: Add'l Info.).  Furthermore, nothing in Plaintiff's Charge or subsequent correspondence would have prompted the EEOC to <u>investigate</u> these alleged actions because they are entirely unrelated to his "unfair" removal from the forklift position in December 2007, his termination in March 2009, which was based on his failure to report a work-related accident, and/or Pictsweet's alleged failure to report work-related accidents.  Moreover, Plaintiff's current claims did not, <u>in fact</u>, grow out of the EEOC investigation; rather, Plaintiff first alleged these claims in his Complaint and expounded upon them in his deposition.  Accordingly, Plaintiff failed to exhaust his administrative remedies with regard to these claims and/or to put Pictsweet on notice of his claims; therefore, Pictsweet is entitled to judgment as a matter of law.

### C.  <u>No Adverse Employment Action</u>

While Plaintiff's claims of (1) being "unfairly" removed from the forklift by Murry; (2) denied the right to drive the forklift by Crabtree; (3) denied medical care or light duty after the

---

[11] Plaintiff does not include failure to report work-related injuries in his Complaint or deposition testimony.

May '08 Incident; and (4) denied payment of Yancey's bills are time barred, and while Plaintiff's claims of being wrongfully (1) denied medical care following the May '08 and March '09 Incidents; (2) not placed on light duty immediately following the May '08 Incident; and (3) denied payment of Yancey's medical bills are also barred by Plaintiff's failure to exhaust his remedies, Plaintiff's claims additionally fail on their merits.  Simply stated, Plaintiff suffered no adverse employment actions.

Not everything that makes an employee unhappy is actionable; only tangible employment actions that cause a significant change in employment status constitute actionable adverse actions.  Burlington Indus. v. Ellerth, 524 U.S. 742, 753, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998).  An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct."  Policastro v. Nw. Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002) (citation omitted).  A materially adverse change might be indicated by "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  Ford v. GMC, 305 F.3d 545, 553 (6th Cir. 2002) (citation omitted).  Cumulatively, the change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 879, 885-86 (6th Cir. 1996) (citation omitted).  De minimis employment actions, such as "reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions."  Policastro, 297 F.3d at 539.

In Kocsis, the plaintiff was hired as a nurse supervisor and was later reassigned to the position of unit nurse.  Id. at 879.  After the transfer, although the plaintiff had to see more patients, rendering her new position more physically demanding, her pay, work hours, and

benefits all remained the same.  Id.  The court granted the defendant's summary judgment motion because the plaintiff had merely suffered an alteration of job responsibilities.  Id. at 886. Similarly, Plaintiff's reassignment from the forklift to dump operator and/or stacker positions and his assignment to chop turnips for about five (5) days in 2007 cannot be construed as adverse employment actions because Plaintiff suffered only an alteration of job responsibilities.  His salary, benefits, and work hours remained unchanged.  (Davis Decl., ¶ 23).  Plaintiff's characterization of dump operator and stacker positions as "heavier and harder jobs" does not, without more, establish his assignment to those position as an adverse employment action, just as the nurse's assignment in Kocsis did not.  See English v. Baptist Healthcare Sys., 2003 U.S. Dist. LEXIS 921, at *12-*13 (W.D. Ky. Jan. 22, 2003) (new position being more physically demanding not adverse) (Exh. 10, cited case).

In Moresi v. AMR Corp., 1999 U.S. Dist. LEXIS 13644 (N.D. Tex. Aug. 31, 1999), the district court held that the plaintiff did not suffer an adverse employment action when his company's managed care company refused to reimburse him for certain medical expenses that were excluded from coverage under the plaintiff's plan.  (Exh. 11, cited case).  Accordingly, Pictsweet's refusal to pay Yancey's medical bills also was not an adverse employment action because Plaintiff was not entitled to the claimed payments, as Pictsweet maintained a policy whereby it would pay only the medical bills approved as part of its workers' compensation physician panel.  (Davis Decl., ¶ 9).  Similarly, Pictsweet's refusal to provide Plaintiff medical care immediately following the May '08 Incident was not adverse because there was a dispute as to whether Plaintiff had been injured and needed medical care at that time.  (J. Ross Depo., p. 106-109).  Moreover, Plaintiff has offered no evidence that he needed medical care that he did not get from Yancey.  Likewise, Pictsweet's refusal to place Plaintiff on immediate light duty

following the May '08 Incident was not adverse, as Plaintiff presented no evidence that he

required light duty until June 3, 2008, at which time he was so placed.  (Davis Decl., ¶ 8).

    Plaintiff also did not suffer an adverse employment action when he was denied medical

care following the March '09 Incident because, according to Plaintiff's deposition testimony,

Curtis tried to set up a doctor's appointment for Plaintiff.  (J. Ross Depo., p. 156-157).  Delay is

not denial or an adverse action.  In Craig v. Lyons Workspace Products, 2005 U.S. Dist. LEXIS

8244, at *4-*5, *12-*13 (N.D. Ill. Apr. 22, 2005), the plaintiff reported that he had been bumped

by a female co-worker carrying a box of parts and then completed his shift without seeking

medical attention.  (Exh. 12, cited case).  The following day, the plaintiff reported that he had

severe pain in his back and legs and wanted to go to the emergency room immediately.  The

supervisor gave the plaintiff an ice pack, and the company nurse advised the plaintiff to see the

company doctor the next day.  Eventually the plaintiff was sent by taxi to an emergency room.

He filed suit, alleging discrimination because his employer refused to send him promptly for

medical treatment.  The court held that a delay in sending the Plaintiff to the emergency room

did not constitute an adverse employment action.  Craig, 2005 U.S. Dist. LEXIS 8244, at *13.

Similarly, Plaintiff did not suffer an adverse employment action when Pictsweet told him, after

hearing his voicemail message, to wait until Monday to see a physician.  (J. Ross Depo., p. 156-

157).  Accordingly, Pictsweet's actions regarding medical treatment for the March '09 Incident

do not rise to the level of an adverse employment action.

    **D.**    **No Similarly Situated, Non-Protected Employees Treated More Favorably**

    Plaintiff's race, sex, age, and disability discrimination claims also fail because he has

failed to identify any similarly situated, non-protected employees who were treated more

favorably.  To be similarly situated, the comparators ". . . must have dealt with the same

supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Smith v. Leggett Wire Co., 220 F.3d 752, 762 (6th Cir. 2000). A similarly situated employee must have also engaged in conduct "substantially identical" to and of "comparable seriousness" to the plaintiff's. See Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002). In Colvin v. Veterans Administration Medical Center, 2010 U.S. App. LEXIS 15459 (6th Cir. 2010), an AA and C pharmacist each received criticism for their lack of timeliness in filling prescriptions; however, they were not similarly situated because, early in the AA pharmacist's career, he made several significant mistakes filling prescriptions, while the asserted comparator did not. (Exh. 13, cited case).

In the instant case, Plaintiff was removed from the forklift for driving at an "excessive speed" and demonstrating anger management problems. (J. Ross Depo., p. 63; Exh. 4; Exh. 5). Plaintiff has identified no individuals outside of his race or sex and/or who are significantly younger than he,[12] who were not removed from the forklift after being counseled for driving at an excessive speed and/or after demonstrating anger management problems. Rather, without any proof, Plaintiff merely surmises that (1) Burns (59, AA, M) was not terminated after hitting Plaintiff with a forklift (J. Ross Depo., p. 77-79); (2) Fonseca (45, H, M) was not reprimanded after hitting the shaker on which Plaintiff was impermissibly sitting (J. Ross Depo., p. 81-82); (3) Robertson (28, AA, M) was not removed from the forklift after injuring Plaintiff on September 25, 2008 (J. Ross Depo., p. 101); and (4) Lampton (45, AA, F) was not terminated or reprimanded after colliding with another forklift (J. Ross Depo., p. 92).

---

[12] Age differences of ten (10) years or more have generally been held to establish the "substantially younger" element, while age differences of ten (10) years or less have not. Grosjean v. First Energy Corp., 349 F.3d 332, 336-39 (6th Cir. 2003).

Burns is of the same race and sex and is older than Plaintiff.  Oncale v. Sundowner

Offshore Servs., 523 U.S. 75, 78 (1998) (same group inference).  Moreover, the fact that another

forklift driver of the same race and sex and older than Plaintiff was treated differently than

Plaintiff (not removed or terminated after engaging in misconduct on the forklift) lends support

to Pictsweet's position that Plaintiff's race, sex, and age were not the basis for the conduct taken

against Plaintiff.  Additionally, Fonseca is the same sex and not significantly younger than

Plaintiff, so he cannot be a valid comparator with regard to the sex and age claims.  Similarly,

Robertson is of the same race and sex as Plaintiff and cannot be a valid comparator for those

claims.  Lastly, Lampton is of the same race and is not significantly younger than Plaintiff and

cannot be a valid comparator for race or age.

Regardless, Plaintiff's race, sex, and age claims fail on their merits.  First, Plaintiff has no

proof of disparate treatment as he has no personal knowledge of whether Burns, Fonseca,

Robertson or Lampton were actually reprimanded after allegedly hitting the shaker or another

forklift.  Instead, Plaintiff's allegation is premised on his belief that, if Plaintiff had hit the shaker

or forklift, which he did not, Plaintiff would have been reprimanded.  (J. Ross Depo., p. 79-82,

91-92).  Conclusory or speculative testimony, however, cannot defeat a motion for summary

judgment.  Lujan, 497 U.S. at 888-89.  Second, Burns, Fonseca, Robertson, and Lampton are not

similarly situated to Plaintiff because they did not engage in conduct "substantially identical" to

or of "comparable seriousness" to Plaintiff's.  See Colvin, 2010 U.S. App. LEXIS 15459 (11,

cited case).  Plaintiff was observed driving a forklift at an excessive speed and demonstrating

anger management problems.  (J. Ross Depo., p. 63).  None of Plaintiff's purported comparators

acted similarly.  Furthermore, Plaintiff was never reprimanded for being involved in a forklift

accident like his comparators.  (J. Ross Depo., p. 100).  As such, Burns, Fonseca, Robertson, and

Lampton do not constitute similarly situated, non-protected employees who were treated more favorably than Plaintiff.[13]

Plaintiff's claims that he was (1) denied medical care following the May '08 and March '09 Incidents; (2) not immediately placed on light duty following the May '08 Incident; and (3) denied payment of Yancey's medical bills on the basis of his race, sex, age, and disability also fail. (J. Ross Depo., p. 96-98, 106-109). Plaintiff names Revell (40, C, F) as his only comparator for his claims that he (1) was denied medical care following the May '08 and March '09 Incidents and (2) was not immediately placed on light duty following the May '08 Incident. (J. Ross Depo., p. 95-97). While Revell is younger than Plaintiff and of a different race and sex, Plaintiff's claims still fail because Plaintiff did not establish that Revell was similarly situated in "all relevant aspects" or that she was treated more favorably.[14] Plaintiff testified that Revell had a bandaged arm; she did not suffer a back injury like Plaintiff. (J. Ross Depo., p. 96). There is also no evidence that Revell drove at an excessive speed or had anger management issues like Plaintiff. Furthermore, Revell and Plaintiff did not have the same job. Rather, Plaintiff was working as a stacker and a product inspector at the time of the alleged May '08 and March '09 Incidents, respectively. (J. Ross Depo., p. 67, 145). Finally, there is no evidence to show they had similar disciplinary histories. Accordingly, Plaintiff and Revell are not similarly situated in "all relevant aspects." See Campbell v. Hamilton Co., 23 Fed. Appx. 318, 326 (6th Cir. 2001) (not similarly situated where different job title, levels of experience, and disciplinary history)

---

[13] Plaintiff's *prima facie* cases of discrimination based on his temporary assignment as a turnip chopper fails because Plaintiff failed to identify <u>any</u> comparators who were not reassigned to a different position during their first five (5) days of employment.

[14] Because Plaintiff was not replaced by Revell, Plaintiff may establish his *prima facie* case by showing that he was <u>treated differently</u> from a similarly situated employee. Martin. 548 F.3d at 410.

(Exh. 14, cited case); <u>Treadwell v. Am. Airlines, Inc.</u>, 716 F. Supp. 2d 721 (W.D. Tenn. 2010)

(not similarly situated with different position).

Moreover, with regard to Plaintiff's claim that he was denied medical care following the

March '09 Incident, Revell is further dissimilar to Plaintiff because Pictsweet had reason to

believe that Plaintiff fabricated the March '09 Incident, while there is no similar indication as to

Revell's accident.  (Davis Decl., ¶¶ 12, 14).  Such a factor constitutes a differentiating or

mitigating circumstance rendering Plaintiff and Revell not similarly situated.  For these reasons,

Plaintiff has failed to prove that similarly situated non-protected employees were treated

differently, and as such, his <i>prima facie</i> cases of race, sex, age, and disability discrimination fail.

Lastly, Plaintiff also failed to show that Revell was treated more favorably.  In <u>Fuelling v.</u>

<u>New Vision Medical Laboratories</u>, 284 Fed. Appx. 247, 255-256 (6th Cir. 2008), the Sixth

Circuit held that the assertion that an AA woman was chosen to fill a position even though she

had "no special qualifications" was insufficient to create a genuine issue of material fact because

the statement provided no evidence to substantiate her "conclusory assertion" about the AA

woman's qualifications. (Exh. 15, cited case).  Plaintiff is analogous to the plaintiff in <u>Fuelling</u>

because he has alleged no evidence substantiating his claims that Revell was immediately sent to

a doctor following her alleged forklift accident.  Plaintiff merely claims that he saw her "sitting

up in the hallway" with a bandaged arm.  (J. Ross Depo., p. 95-96).  Similarly, Plaintiff's claim

that he saw Revell "sitting up in the hallway" does not establish that she was actually placed on

light duty following her accident.  It establishes only that on one day at one time, Plaintiff saw

Revell "sitting up in the hallway."  In fact, Revell was terminated on October 10, 2008, for

unsatisfactory performance stemming from forklift safety violations.  (Davis Decl., ¶ 12).

Accordingly, Plaintiff's assertion that Revell was treated more favorably is a "mere personal

belief, conjecture and speculation," which is insufficient to support an inference of discrimination.  See Wexler v. White's Fine Furniture, 317 F.3d 564, 584 (6th Cir. 2003). Lastly, Plaintiff names no comparator for his claim that he was denied payment of medical bills owed to Yancey; accordingly, his *prima facie* cases fail.

> ### E.   __Pictsweet Acted For Legitimate, Non-Discriminatory Reasons__

Even if Plaintiff can establish a *prima facie* case of discrimination on the basis of race, sex, age, and/or disability, Plaintiff's claims still fail because he cannot show that Pictsweet's reasons for their action were pretext for discrimination.  As to the removal from the forklift, the evidence shows that Murry removed Plaintiff from the forklift after observing Plaintiff driving at an "excessive speed" and after Plaintiff demonstrated anger management problems, which Pictsweet considered a safety risk.  (J. Ross Depo., p. 63; Exh. 4; Exh. 5).  Safety concerns such as these constitute legitimate, non-discriminatory reasons for an employment action.  In Aquino v. Honda of Am., Inc., 158 Fed. Appx. 667, 677 (6th Cir. 2005), the defendant asserted that it terminated the plaintiff's employment based on its belief that he vandalized several vehicles, and it was concerned for its customers safety.  (Exh. 16, cited case).  The Sixth Circuit held that the defendant's safety concerns were "clearly valid concerns," and that, regardless of whether the plaintiff actually committed the vandalism, the defendant reasonably believed that he had done so and acted accordingly.  Id.  Similarly, Pictsweet's concern that Plaintiff was driving the forklift at excessive speeds and exhibiting anger management problems, and its subsequent decision to remove him from the forklift, were clearly valid and non-discriminatory.  (J. Ross Depo., p. 119; Exh. 5).

Pictsweet also had a legitimate, non-discriminatory reason for failing to provide Plaintiff medical care and/or immediately place him on light duty following the May '08 Incident.

Namely, Murry did not believe that Plaintiff had been injured following the May '08 Incident, as such, there was no reason for Pictsweet to provide medical care and/or place Plaintiff on light duty.  (J. Ross Depo., p. 106-109).  Similarly, Pictsweet had reason to believe that Plaintiff fabricated the March '09 Incident, as no employee witnessed the event occur and Plaintiff did not report it properly.  (Davis Decl., ¶ 14).  See Sampath v. Immucor, Inc., 271 Fed. Appx. 955, 959 (11th Cir. 2008) (employer's belief that plaintiff had intentionally provided materially incomplete information to the auditors constituted a legitimate, non-discriminatory reason for transfer) (Exh. 17, cited case); Richardson v. Dougherty Co., 185 Fed. Appx. 785, 788 (11th Cir. 2006) (employer's belief that allegations against terminated employer were truthful constituted a legitimate non-discriminatory reason for his termination) (Exh. 18, cited case).  Lastly, Pictsweet had a legitimate, non-discriminatory reason for declining to pay the medical bills owed to Yancey, as she was not part of an approved Pictsweet workers' compensation physician panel. (Davis Decl., ¶¶ 9-11).

Accordingly, Pictsweet had legitimate, non-discriminatory reasons, entirely unrelated to Plaintiff's race, sex, age or disability, for its actions.  Therefore, Plaintiff bears the burden of demonstrating that Pictsweet's reasons are pretext for discrimination.  However, Plaintiff has not produced evidence establishing that Pictsweet's proffered reasons are pretextual.  To the contrary, Plaintiff admits that Murry (AA, M, 52) "just didn't like him," regardless of Plaintiff's race, sex, age or disability.  (J. Ross Depo, p. 90).  Because Title VII is not a general "civility code," the fact that Murry may not have liked and/or trusted Plaintiff does not give rise to an inference of discrimination, especially is light of the fact that Murry is of Plaintiff's same race and sex and is older than Plaintiff.  See generally, Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir. 2000).  Further, Plaintiff has offered no evidence by which a jury could

- 23 -

conclude that Pictsweet's proffered reasons for its actions (disbelief that injuries in fact occurred), even if mistaken, were not its true reasons.  After all, he has not identified any similarly situated, non-protected employees who were treated differently.

Finally, when hired in 2006 and when rehired in 2007, Plaintiff was AA, M, and 48 and 49 years-old, respectively.  (J. Ross Depo., p. 11, 17).  It is legally significant since it is nonsensical for Pictsweet to hire Plaintiff twice with that knowledge only to discriminate against him based on those same characteristics a short time later.  Wexler, 317 F.3d at 571 (where hirer and firer are same individual and termination of employment occurs within a relatively short time span following hiring, a strong inference exists that discrimination was not a determining factor for adverse action taken by employer).

F.     No ADA Violation

Plaintiff also cannot establish that he was discriminated against on the basis of a disability because he is not disabled within the meaning of the ADA.  Every physical or mental impairment does not constitute a disability under the ADA.[15]  Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195 (2002); Bryson v. Regis Corp., 498 F.3d 561, 575 (6th Cir. 2007).  The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2)(A)-(C)(2006).  The regulations promulgated by the EEOC define "major life activities" as the basic activities that the average person can perform with little or no difficulty such as "walking, seeing, hearing,

---

[15] Each alleged act of disability discrimination occurred *before* the amendments to the ADA took effect on January 1, 2009, except Plaintiff's claim that he was denied medical care following the March '09 incident.  Accordingly, the new standards regarding "major life activities" and "substantially limits" apply only to that claim.  See Milholland v. Sumner Co. Bd. of Educ., 569 F.3d 562, 567 (6th Cir. 2009) (holding that "the ADA Amendments Act does not apply to pre-amendment conduct").  However, because Plaintiff's "major life activity" of working was not "substantially limited," as that term is defined under either version of the Act, the claims are addressed together.

speaking, breathing, learning, and working" as well as "sitting, standing, lifting, reaching."  29

C.F.R. §§ 1630.2(I), App.  "Substantially limits" means either the inability to perform a major

life activity or a significant restriction on a major life activity as compared to the general

population.  29 C.F.R. § 1630.2(j)(1).  The EEOC regulations further provide that a court should

consider: (1) the nature and severity of the impairment; (2) the duration of the impairment; and

(3) its long term impact.  29 C.F.R. § 1630.2(j)(2).  Generally, short term restrictions are not

substantially limiting.  Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996).  The plaintiff

bears the burden of proving that he is disabled.  Monette v. Elec. Data Sys. Corp., 90 F.3d 1173,

1186 (6th Cir. 1996).  In Anderson v. Avon Products, 340 Fed. Appx. 284, 288 (6th Cir. 2009),

the plaintiff merely produced evidence that he suffered from diverticulitis; he did not identify, in

either his complaint or his briefs, any major life activity that his condition substantially limited.

(Exh. 19, cited case).  The Sixth Circuit noted, "It is insufficient for individuals attempting to

prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment.

Instead, the ADA requires those claiming the Act's protection to prove a disability by offering

evidence that the extent of the limitation . . . is substantial."  Toyota Motor Mfg. v. Williams,

534 U.S. 184, 198 (2002) (internal quotation marks and citation omitted).

    In the instant case, Plaintiff has alleged problems with his knees, left shoulder, and

cervical spine as the basis for his disability.  (J. Ross Depo., p. 29-30).  However, Plaintiff has

offered no evidence establishing that he was unable to perform any major life activities because

of the "disability" with his knees or left shoulder.  To the contrary, Plaintiff stated that he injured

his knees in 1979 and 1980.  Plaintiff readily admitted that, at the time of hire, he suffered from

no physical or mental impairment that prohibited him for performing his job, and he was able to

care for, groom, feed, and clothe himself.  (J. Ross Depo., p. 30-31, 38-39).  Similarly, Plaintiff's

shoulder injury is not a "disability" under the ADA.  Plaintiff merely stated that his left shoulder began to "hurt" during the course of his employment; he did not specifically allege or prove any major life activity that it substantially limited.  (J. Ross Depo., p. 30-31, 38).  For this reason, he is similar to the plaintiff in Anderson.

Plaintiff also cannot establish that he was disabled as a result of his cervical spine problems, even though they resulted in a lifting restriction, because (1) he was not substantially limited in the major life activity of working and (2) his injury was temporary.  When "working" is the major life activity at issue, the statutory phrase "substantially limits" means the plaintiff is unable to work in a broad class of jobs as the result of a disability.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).  In Cotter v. Ajilon Services, 287 F.3d 593, 599 (6th Cir. 2002), the plaintiff alleged that his colitis restricts his ability to perform manual tasks such as lifting, bending, standing, carrying things, and performing overtime work.  The district court found that the plaintiff was not substantially limited in his ability to work because he found a similar job after termination and continued to work without taking time off because of his colitis.  Id. Similarly, Plaintiff continuously worked for Pictsweet on the floor in the Repack Department both before and after suffering cervical spine injures; he was merely reassigned to a product inspector position.  (Davis Decl., ¶ 5).  Significantly, Plaintiff worked a construction job following his termination from Pictsweet, showing that his spine, shoulder, and knee problems did not limit his ability to do heavy labor or otherwise work.  (J. Ross Depo., p. 187). Accordingly, he was not substantially limited in the major life activity of working.

Plaintiff is also not disabled because his cervical spine issues were temporary.  In Rousch, the plaintiff suffered from a kidney condition and underwent a number of surgeries to correct her condition.  Plaintiff's ability to work was substantially limited during that period;

however, the court held that "because plaintiff's kidney condition was temporary, it is not substantially limiting and, therefore, not a disability under the ADA." <u>Roush</u>, 96 F.3d at 844. Similarly, Plaintiff's cervical spine issues are temporary, as evidenced by the fact that Plaintiff's herniated discs are in the process of healing, and Plaintiff worked a construction job following his termination from Pictsweet. (J. Ross Depo., p. 187; 10/13/09 Radiology Report, Exh. 12 to J. Ross Depo., filed separately as a sealed exhibit). <u>See also</u> <u>Green v. Rosemont Indus.</u>, 5 F. Supp. 2d 568 (S.D. Ohio 1998) (hernia is temporary condition, not disability under ADA). Therefore, Plaintiff's cervical spine, shoulder, and knee problems do not rise to the level of a disability under the ADA. Pictsweet, therefore, is entitled to judgment as a matter of law.

###  G.   <u>No Claim of Retaliation Under Title VII</u>

Plaintiff also alleges that he was (1) "unfairly" removed from the forklift position by Murry and assigned to "heavier and harder jobs;" (2) not placed on light duty following the May '08 Incident; and (3) denied medical care following the May '08 and March '09 Incidents in retaliation for complaining to Crabtree about his supervisor Murry. (D.E. 1, ¶ 4; J. Ross Depo., p. 44-45, 96-98, 109-110). Plaintiff further alleges that he (1) was written up for various workplace violations and (2) was not allowed to transfer to the Freshpack Department in retaliation for filing workers' compensation claims. (J. Ross Depo., p. 128-129, 132-133). Lastly, Plaintiff alleges that he was wrongfully terminated because "he got hurt too much."[16] (J. Ross Depo., p. 111). As previously detailed, Plaintiff's claims are time-barred because they occurred more than 300 days before he filed his Charge and/or because he failed to exhaust his administrative remedies. Notwithstanding, Plaintiff's claims of retaliation fail on their merits.

---

[16] <u>See supra</u> fn. 3. Additionally, Plaintiff does not specifically allege that he was terminated for filing workers' compensation claims. For purposes of its summary judgment motion, Pictsweet will assume, based on Plaintiff's statement that he was terminated because he "got hurt too much," that Plaintiff intended to allege that he was unlawfully terminated in retaliation for filing workers' compensation claims.

An employee engages in "protected activity" for purposes of bringing a retaliation action when he or she opposes a practice that the employee reasonably believes to be a violation of Title VII. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000). The EEOC has identified a number of examples of "opposing" conduct which is protected by Title VII, including:

> [C]omplaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer – e.g., former employers, union, and co-workers.

Id. Plaintiff cannot establish a *prima facie* case of retaliation because he did not engage in "protected activity" within the meaning of Title VII when he complained to Crabtree about Murry. Specifically, Plaintiff complained to Crabtree that Murry was allowing other forklift drivers to do less work than he. (J. Ross Depo., p. 97-98). In contrast to complaining of unlawful conduct or practices, Plaintiff complained that Murry allowed all races and sexes (AA, H, C, M, and F) not to work as hard as Plaintiff. (J. Ross Depo., p. 73). Accordingly, by Plaintiff's own statements, he was not claiming that, Murry (52, AA, M) was discriminating against Plaintiff or others on the basis of any protected category. Thus, Plaintiff was not "opposing" a practice made unlawful under Title VII or other federal statute.

Additionally, there is no evidence Plaintiff complained that he or others were being treated wrongfully for having filed workers' compensation claims or for being hurt. (J. Ross Depo., p. 97-98, 128-129, 132-133). This aspect was first raised in Plaintiff's Complaint and deposition testimony. Furthermore, workers' compensation retaliation claims arise under state law, not Title VII, and as such, cannot form the basis of a Title VII retaliation claim. Conner-Clement v. Trinity Indus., 2009 U.S. Dist. LEXIS 6125, at *16-*17 (M.D. Tenn. Jan. 28, 2009)

(Exh. 20, cited case).  Likewise, Plaintiff's claim that he was terminated because he got "hurt too much" cannot form the basis of a retaliation claim under Title VII or any other federal statute, as getting "hurt too much" does not constitute a protected activity or a protected status under Title VII or any other federal statute.[17]  Moreover, as previously detailed, Plaintiff was not disabled under the ADA as a result of any work-related injury, so any claim that "getting hurt too much" is a claim under the ADA fails as well.

Plaintiff's claims of retaliation also fail because Pictsweet acted for legitimate, non-retaliatory reasons.  Namely, (1) Plaintiff was removed from the forklift because he was considered a safety risk[18]; (2) Plaintiff was not placed on light duty following the May '08 Incident because Murry did not believe that Plaintiff was injured, a contention which Plaintiff failed to show was pretext for discrimination[19]; and (3) Plaintiff was denied medical care for the May '08 and March '09 Incidents because Pictsweet had reason to believe Plaintiff fabricated the accidents.[20]  Additionally, Pictsweet had legitimate, non-retaliatory reasons for reprimanding Plaintiff for workplace violations; namely, Plaintiff in fact committed the alleged violations and was counseled according to Pictsweet policy.  (J. Ross Depo., p. 135-136; Exh. 4; Exh. 5; Exh. 6; Davis Decl., ¶ 17).  Similarly, Plaintiff was not transferred to the Freshpack Department pursuant to Pictsweet's policy that employees with recent discipline are prohibited from transfer between

---

[17] If Plaintiff's claim is under state law, Plaintiff must prove his claim for workers' compensation benefits was a substantial factor in Pictsweet's motivation to terminate his employment.  See Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993).  However, Plaintiff's claim will fail because Pictsweet had a legitimate, non-retaliatory reason to terminate Plaintiff's employment; namely, his failure to report the March '09 Incident properly to his supervisors in violation of Pictsweet policy.  Pictsweet also had reason to believe that Plaintiff fabricated the March '09 Incident, as no other employees witnessed the accident.  Moreover, Plaintiff made numerous reports of work-related accidents over the course of his employment and was not terminated after reporting those accidents, further establishing that Pictsweet was not motivated to terminate Plaintiff's employment as a result of his claims for workers' compensation benefits.

[18] See discussion supra p. 22-23.

[19] See discussion supra p. 23-24.

[20] See discussion supra p. 23-24.

departments, as Plaintiff had recent discipline when he made his requests.  (J. Ross Depo., p. 133).  Lastly, Plaintiff was terminated for a legitimate, non-retaliatory reason – his failure to report the March '09 Incident properly to his supervisors, which constituted a violation of Pictsweet policy.  (Davis Decl., ¶¶ 15-16).

## VI.     CONCLUSION

For the foregoing reasons, summary judgment is proper in Pictsweet's favor as to all claims by Plaintiff in this action.

Respectfully submitted January 3, 2011,

 /s/ N. Victoria Holladay
N. Victoria Holladay  (Tenn. No. 18487)
FORD & HARRISON LLP
795 Ridge Lake Boulevard, Suite 300
Memphis, Tennessee 38120
Telephone:    (901) 291-1500
Facsimile:    (901) 291-1501
vholladay@fordharrison.com

Counsel for Defendant, The Pictsweet Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Pictsweet's Memorandum of Law in Support of Motion for Summary Judgment has been served upon the following via United States Mail, postage prepaid, this 3rd day of January 2011:

Mr. Jamie O. Ross
P. O. Box 762
Humboldt, TN  38343

 /s/ N. Victoria Holladay